IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

REBA WELLER and
RAYMOND H. WELLER,
her husband

        Plaintiffs,

v.                                                                                Civil Action: 3:05-cv-90

AMERICAN HOME ASSURANCE
COMPANY,

        Defendant.

## MEMORANDUM, OPINION, AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL REGARDING INTERROGATORY 13 AND REQUEST FOR PRODUCTION 11

On April 3, 2007 came the above named Plaintiffs, by James B. Stoneking, in person, and Defendant, by Michael G. Gallaway, in person, for Plaintiffs' Motion to Compel. Testimony was not taken, and no other evidence was introduced.

### I. Introduction

A.    Background.

This case concerns a statutory insurance "bad faith" claim under the West Virginia Unfair Trade Practices Act (UTPA), W. Va. Code § 33-11-4(9). On December 18, 2002, a driver insured by Defendant rear ended a car driven by Plaintiff Reba Weller. Plaintiff Reba Weller filed a claim against the driver's insurance policy with AHAC, alleging injuries from the accident. Plaintiffs ultimately filed a civil action against the driver, which ended in settlement. Plaintiffs assert in this action that Defendant violated the UTPA in the handling of the underlying claim.

The parties engaged in discovery and a dispute arose. Plaintiffs filed a Motion to Compel on March 19, 2007. Defendant filed a Response on March 28, 2007. Plaintiffs filed a Reply on March 30, 2007. An evidentiary hearing and argument was held regarding the Motion on April 3, 2007.

B.  <u>The Motion</u>.

Plaintiffs' Motion to Compel (docket 31)

C.  <u>Decision</u>.

Plaintiffs' Motion to Compel is GRANTED IN PART and DENIED IN PART regarding interrogatory 13 and request for production 11. Although the Motion to Compel also concerned request for production 1, that request shall be dealt with in a separate subsequent order due to the complexity of the issues.

## II. Facts

1. Plaintiffs served interrogatories and requests for production on Defendant on December 6, 2006. Defendant responded on January 12, 2006.

2. Plaintiffs found some of Defendant's responses unsatisfactory. On February 12, 2007, Plaintiffs sent Defendant a letter requesting it supplement some of its responses. Defendant responded with another letter on February 21, 2007. Defendant supplemented some of its discovery responses.

3. Plaintiffs remained unsatisfied with Defendant's responses to interrogatory 13 and requests for production 1 and 11. Plaintiffs filed the instant Motion to Compel, which proceeded as set forth above.

III.  Plaintiffs' Motion to Compel

A.Contentions of the Parties

Plaintiffs ask the Court to grant their Motion to Compel.  Plaintiffs argue interrogatory 13 contains relevant information and, given the broad scope of discovery, should be produced.  Plaintiffs make the same argument regarding request for production 11.

Defendant requests the Court to deny the Motion to Compel.  Defendant asserts interrogatory 13 is overly broad and unduly burdensome.  If the Court should disagree, Defendant asks the Court limit the interrogatory's scope to circumstances similar to the facts of this suit.  Defendant contends the material sought in request for production 11 is covered by a privilege for employee privacy.

B.The Standards

1.Discovery - Scope.  The Federal Rules provide that "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1).  The Rules further give courts the authority to "order discovery of any matter relevant to the subject matter involved . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii)." Id.

2.Discovery - Scope.  It has been repeatedly held that the "discovery rules are to be accorded a broad and liberal treatment." Hickman v. Taylor, 329 U.S. 495, 507, 67 S. Ct. 385,

392, 91 L. Ed. 451, 460 (1947). However, the discovery sought must be relevant. Fed. R. Civ. P. 26(b)(1); see also Herbert v. Lando, 441 U.S. 153, 177, 99 S. Ct. 1635, 1649, 60 L. Ed. 2d 115, 134 (1979) (stating that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied").

      3.      Discovery - Relevancy. A court must strike a balance between the broad scope of the rules of discovery and the discovery of relevant evidence that is ultimately deemed admissible or inadmissible at trial. The test for relevancy under the discovery rules is necessarily broader than the test for relevancy under Rule 402 of the Federal Rules of Evidence. Fed. R. Civ. P. 26(b)(1) ("relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). In striking the appropriate balance between these two tensions, "[d]istrict courts enjoy nearly unfettered discretion to control the timing and scope of discovery and impose sanctions for failures to comply with its discovery orders." Hinkle v. City of Clarksburg, 81 F.3d 416, 426 (4th Cir. 1996) (citations omitted).

      4.      Discovery - Duty to Supplement. Once the discovery process has commenced, a party has "a duty seasonably to amend a prior response . . . if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(2).

      5.      Discovery - Duty to Respond Fully and Completely - No Gamesmanship. Parties must respond truthfully, fully and completely to discovery or explain truthfully, fully and completely why they cannot respond. Hansel v. Shell Oil Corporation, 169 F.R.D. 303 (E.D. Pa.

1996).  Gamesmanship to evade answering as required is not allowed.  United States v. Marshall, 132 F.3d 63, 69 (D.C. Cir. 1998); Kalejs v. INS, 10 F.3d 441, 463 (7th Cir. 1993); Outley v. City of New York, 837 F.2d 587, 590 (2d Cir. 1988).

      6.      Discovery - Interrogatories.  Federal Rule of Civil Procedure 33 governs interrogatories.  It states that "Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable."

      7.      Discovery - Objections to Interrogatories.  All objections must be stated with specificity and any objection not raised is waived.  Fed. R. Civ. P. 33(b)(4).  "Mere recitation of familiar litany that interrogatory is 'overly broad, burdensome, oppressive, and irrelevant'" does not suffice as specific objection. Momah, v. Albert Einstein Med. Ctr., 164 F.R.D. 412, 417 (E.D. Pa. 1996) (quoting Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir. 1982)).

      8.      Discovery - Requests for Production.  A party seeking discovery may serve a request on another party asking him to permit the requesting party "to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served." Fed. R. Civ. P. 34(a).

      9.      Discovery - Requests for Production - Objections.  While Rule 34 of the Federal Rules of Civil Procedure does not contain the same specificity and waiver provisions as Rule 33 of the Federal rules of Civil Procedure, the Advisory Committee notes to Rule 34 states that "the procedure provided for in Rule 34 is essentially the same as that in Rule 33." Pulsecard v. Discover Card Servs., Inc., 168 F.R.D. 295, 303 (D. Kan. 1996).

10.     Discovery - Motion to Compel.  Motions to compel responses to interrogatories and requests for production are governed by Federal Rule of Civil Procedure 37(a)(2)(B).  This Rule provides that if a party declines to answer an interrogatory or request for production, the serving party "may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request."  Id.

11.     Discovery - Motion to Compel - Burden of Proof.  The party opposing a motion to compel bears the burden of showing why it should not be granted.  Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 296-97 (E.D. Pa. 1980); Rogers v. Tri-State Materials Corp., 51 F.R.D. 234, 247 (N.D. W. Va. 1970).

C.     Discussion

I.

Interrogatory 13

Interrogatory 13 asked Defendant to identify every claims adjuster it employed to handle bodily injury claims in West Virginia from 2000 to the present.  If the person was still employed, Defendant was asked to state the person's current position.  The interrogatory also asked for contact information regarding the person.  Plaintiffs argue the information is relevant to their claims and should therefore be produced.  Defendants argue the interrogatory's scope is overly broad, unduly burdensome, and largely irrelevant.  Defendant contends it covers areas of bodily injury claims that have nothing to do with this case, such as commercial, marine, and environmental bodily injuries, among others.  Defendant also argues it will take hundreds of hours to search its files and identify the relevant information.  Plaintiffs counter Defendant's arguments regarding burdensomeness by stating that Defendant may identify the relevant

persons by simply sending an email to its adjusters or office heads. Alternatively, it could simply place a few calls.

The Court must first determine if the information in the interrogatory is relevant. To succeed on a third party bad faith claim such as this one, Plaintiffs must demonstrate Defendant violated the law with such frequency as to demonstrate the conduct constituted a general business practice. Jenkins v. J.C. Penney Cas. Ins. Co., 167 W. Va. 597, 610, 280 S.E.2d 252, 260 (1981). The West Virginia Supreme Court later defined what constitutes a general business practice by holding that a plaintiff must prove

> that the conduct in question constitutes more than a single violation of W. Va. Code § 33-11-4(9), that the violations arise from separate, discrete acts or omissions in the claim settlement, and that they arise from a habit, custom, usage, or business policy of the insurer, so that, viewing the conduct as a whole, the finder of fact is able to conclude that the practice or practices are sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can be considered a "general business practice" and can be distinguished by fair minds from an isolated event.

Holloman v. Nationwide Mut. Ins. Co., 217 W. Va. 269, 273, 617 S.E.2d 816, 820 (2005) (quoting Syl. Pt. 4, Dodrill v. Nationwide Mut. Ins. Co., 201 W. Va. 1, 491 S.E.2d 1 (1997)); see also Jackson v. State Farm Mut. Auto. Ins. Co., 215 W. Va. 634, 645-46, 600 S.E.2d 346, 357-58 (2004) (discussing how a plaintiff may show a general business practice).

The Court believes the information sought in this interrogatory passes the minimum test of relevance under Rule 26. The insurance adjusters handling bodily injury claims for Defendant will almost certainly have information regarding Defendant's business practices. Plaintiffs need this type of information to prove their claims. Jenkins, 167 W. Va. at 610. However, the Court also believes the interrogatory is overly broad to the extent it seeks information about claims adjusters other than those handling automobile accident bodily injury claims. Limiting the

interrogatory to these persons will give Plaintiffs the information most applicable to their claims while avoiding unnecessary discovery. In a further effort to limit unnecessary discovery, the Court limits the temporal scope of the interrogatory to five years before the filing of this action.

The Court now turns to the issue of undue burden. A party seeking to avoid discovery on the basis of an undue burden has the burden of producing evidence of that burden. Graham v. Casey's Gen. Stores, Inc., 206 F.R.D. 251, 254 (S.D. Ind. 2002). It must be specifically shown how compliance with the discovery request would result in an undue burden. Martin v. Easton Publ'g Co., 85 F.R.D. 312, 316 (E.D. Pa. 1980). If evidence is produced, "a court should balance the burden on the interrogated party against the benefit to the discovering party of having the information." Hoffman v. United Telecommunications, Inc., 117 F.R.D. 436, 438 (D. Kan. 1987).

The issue of burden in this case is a complicated one since Defendant does not employ its own claims adjusters. Rather, Defendant hires other companies to act as its claims adjusters. In this case, Defendant hired AIG Personal Lines. It is unknown how many other companies Defendant has utilized in other claims. As evidence of burden, Defendant submitted an affidavit from one Tim Gattis, an employee of AIG Personal Lines. Gattis stated that to provide the information as originally requested by Plaintiffs would be a herculean task. It would require a number of computer searches. Alternatively, a list of claims could be examined. However, this would take "at least hundreds of man hours." To determine the current positions of the relevant claims adjusters, a manual search would have to be conducted of the human resources files. Gattis stated this would again consume hundreds of hours. Plaintiffs argue that even if production of the requested information is burdensome, it is not unduly burdensome.

The Court first holds Defendant may not use the fact that it farms out its claims adjusting to other companies to avoid discovery. As Justice Cardozo stated long ago, it is a fundamental principle of the law that "'He who prevents a thing from being done may not avail himself of the non-performance which he has himself occasioned.'" R.H. Stearns Co. v. United States, 291 U.S. 54, 61, 54 S. Ct. 325, 328, 78 L. Ed. 647, 653 (1934) (quoting Dolan v. Rodgers, 149 N.Y. 489, 491, 44 N.E. 167 (1896)). Another court stated this principle by holding that "Since plaintiff created this situation . . . it seems only reasonable that plaintiff should bear the burden of any inconvenience resulting from the situation it has created." Calabrian Co. v. Bankok Bank, Ltd., 55 F.R.D. 82, 87 (S.D.N.Y. 1972). Indeed, allowing Defendant to argue undue burden since it chooses to hire other companies to handle its claims adjusting rather than employ its own claims adjusters would simply encourage Defendant to adopt other practices in order to avoid discovery. This law does not permit this. Defendant must bear the cost of having a complex claims handling process.

It will now be considered whether, ignoring Defendant's corporate structure, Defendant has satisfied its burden of showing complying with this interrogatory would be unduly burdensome. In Beach v. City of Olathe, 203 F.R.D. 489, 493-94 (D. Kan. 2001), the court considered an objection based on burdensomeness where the responding party produced an affidavit stating complying would require hundreds of hours to examine files. Nevertheless, the court found the benefit to the party seeking discovery outweighed the burden of production and therefore ordered discovery. Id. at 494. On the other hand, in Flatow v. Islamic Republic of Iran, 202 F.R.D. 35, 37-38 (D.D.C. 2001), the court found a subpoena unduly burdensome where it was estimated compliance would take 1,500 hours and the search was unlikely to produce

9

relevant information.

The Court finds Defendant has failed to meet its burden of showing an undue burden. Defendant has failed to produce specific information regarding the amount of time compliance will take, except that it will take hundreds of hours for AIG Personal Lines to compile the information. It is unknown how long it would take any other companies involved to produce responsive information. The Court will not assume that it would take them the same amount of time as AIG Personal Lines. Linder v. Dep't of Defense, 133 F.3d 17, 24 (D.C. Cir. 1998) (holding that where the FBI and CIA were subject to a subpoena and the FBI produced evidence of burden, but the CIA did not, it was inappropriate to assume the CIA would face the same burden as the FBI). Defendant has also not produced any evidence regarding the monetary cost of compliance. Furthermore, the information sought here is highly relevant to Plaintiffs' claims. As noted above, claims adjusters will likely have information about Defendant's business practices. Plaintiffs must demonstrate a general business practice of Defendant to succeed on their claims. Jenkins, 167 W. Va. at 610. Thus, the Court finds Defendant has failed to demonstrate an undue burden.

Therefore, the Motion to Compel regarding interrogatory 13 is GRANTED IN PART and DENIED IN PART. Defendant shall comply with the interrogatory to the extent it seeks information regarding claims adjusters handling automobile accident bodily injury claims in West Virginia from five years prior to the filing of this action.

II.

Request for Production 11

Request 11 asked Defendant to produce the complete personnel file of any employee who

handled or supervised the insurance claims of Plaintiffs in the underlying matter. Defendant objected that the material was irrelevant and protected by the employees' privacy rights. Plaintiffs argue the material is relevant to showing the bad faith of Defendant and should therefore be subject to discovery. Defendant cites several cases holding the personnel files of employees are only subject to discovery in limited circumstances. Defendant also contends that Plaintiffs do not know exactly what they seek in this request and given the privacy rights of employees, the material is not subject to discovery.

Numerous courts have recognized the personnel files of employees are subject to discovery only in limited circumstances. This is because "personal privacy and accurate, employee evaluations are important public policy concerns." Blount v. Wake Elec. Membership Corp., 162 F.R.D. 102, 105 (E.D.N.C. 1993). If courts frequently allowed discovery of employee files, they "would discourage future candid evaluations of employees, making it difficult for the firm to maintain its standards and improve its performance." Id. Nevertheless, courts have recognized the broad scope of discovery provided in the Federal Rules competes with the interest of employee privacy. In re Hawaii Corp., 88 F.R.D. 518, 524 (D. Haw. 1980). The Rules "make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." United States v. Procter & Gamble Co., 356 U.S. 677, 682, 78 S. Ct. 983, 986-87, 2 L. Ed. 2d 1077, 1082 (1958). Therefore, courts have formulated a two part test to determine if material in an employee personnel file should be discoverable. It "is permissible only if '(1) the material sought is clearly relevant and (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable.'" Coker v. Duke & Co., 177 F.R.D. 682, 685 (M.D. Ala. 1998) (quoting In re One

Bancorp Secs. Litig., 134 F.R.D. 4, 12 (D. Me. 1991)).

In applying the above test, a distinction exists between employees whose conduct is directly at issue and other employees. Where the personnel files of employees whose particular actions are relevant is sought, "the relevance requirement is generally satisfied by the fact that the personnel file and employee evaluations should indicate the training, experience, work record, and qualifications of the, employee." Blount, 162 F.R.D. at 106. A plaintiff's need for this information is often sufficient to outweigh the public policy against disclosure since "the personnel files possess an inherent reliability which cannot now be duplicated through any other source." Id. Another court stated that "where the files sought are those of employees whose action or inaction has a direct bearing on the Plaintiff's claims or Defendant's affirmative defenses and especially where, as here, the court has issued an appropriate confidentiality order, personnel files are subject to discovery." Cason v. Builders Firstsource-Southeast Group, Inc., 159 F. Supp. 2d 242, 247 (W.D.N.C. 2001). A discovering party must make a separate showing of why the personnel files of other employees are discoverable. Id. at 248.

In this case, Plaintiffs have sought only the personnel files of "employees and/or representatives of this defendant that in any way handled, adjusted and/or supervised the claims of plaintiff." The work history of the persons who handled Plaintiffs' insurance claim are obviously critical to their allegations of bad faith by Defendant. Materials in these persons' records relating to their qualifications, experience, training, and work history easily passes the test of relevance. Blount, 162 F.R.D. at 106. Moreover, it is difficult to see how Plaintiffs could obtain equivalent material from other sources. As the Blount court noted, the materials in the personnel files "were contemporaneous and made without litigation in mind." Id. These

materials will reflect how the persons were viewed at the time they handled Plaintiffs' claim. This represents critical information.

The Court does have concerns that some material in the personnel files is irrelevant. Such material would be things like health records. Not only is this material irrelevant, but its disclosure is highly intrusive to the persons' privacy. It was these concerns that led courts to develop the employee privacy privilege. The Court believes the best way to account for these concerns is to limit the request to the areas of relevance identified by the Blount court – namely, material relating to "the training, experience, work record, and qualifications" of the person. Id.

The Court is also concerned that the material subject to discovery may be unnecessarily revealed to third parties. This would again represent a highly intrusive act violating the privacy of the employees. The Court will follow the suggestion of the Cason court and enter a protective order providing Plaintiffs may not disclose the material produced to persons outside this litigation and must return all material at the conclusion of the litigation. Cason, 159 F. Supp. 2d at 247.

Accordingly, the Motion to Compel regarding request for production 11 is GRANTED IN PART and DENIED IN PART. It is granted to the extent that Defendant shall produce the portions of the personnel files pertaining to training, experience, work record, and qualifications of all persons who meet the description of the request. It is denied to the extent that Defendant need not produce records not relating to the areas identified above. Furthermore, Plaintiffs shall not reveal any information received from these files to persons outside this litigation and shall return all materials received at the conclusion of the litigation.

IV. Decision

Plaintiffs' Motion to Compel is GRANTED IN PART and DENIED IN PART regarding interrogatory 13 and request for production 11.  Although the Motion to Compel also concerned request for production 1, that request shall be dealt with in a separate subsequent order due to the complexity of the issues.

Any party may, within ten (10) days after being served with a copy of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection.  A copy of such objections should also be submitted to the District Court Judge of Record.  Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Order.

Filing of objections does not stay this Order.


DATED: April 10, 2007

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE